## UNITED STATES DISTRICT COURT
## DISTRICT COURT OF CONNECTICUT

| | |
|---|---|
| Tammy Cunningham,<br><br>              Plaintiff,<br><br>v.<br><br>Parkview Advance, LLC,<br><br>              Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

## INTRODUCTION

1. Americans receive billions of spam text messages every year.

2. Defendant Parkview Advance, LLC ("Parkview" or "Defendant") is a company that contributes to this spam by sending telemarketing text messages for the purpose of offering its loan products and services.

3. Like most Americans, Tammy Cunningham ("Tammy" or "Plaintiff") has a mobile residential telephone.

4. Tammy, and members of the classes, use their phones to receive and make important calls, to get emergency information and to receive and send text messages to family members and friends. They use their phones regularly for their personal enjoyment.

5. Parkview bombards unsuspecting consumers nationwide, including Tammy, with annoying, deceptive, automated texts attempting to sell a variety of their loan products.

6. But Tammy's, and class members' privacy and phones are being invaded by the telemarketing text messages of Parkview trying to sell her loan products.

7. Tammy and class members have no relationship with Parkview, have no account with Parkview, have never provided any phone number to Parkview, and have never consented to Parkview sending any type of communication.

8. Tammy, and some class members, have tried to eliminate the harassment and invasion of privacy from unauthorized calls by registering on the National Do Not Call Registry ("DNCR"), but even that did not work.

9. Tammy is not the only person Parkview has harassed with calls and text messages. Other clients of Plaintiff's counsel have reported similar calls and texts to their residential numbers, initiated by Parkview.

10. Yet, Parkview continues to blast calls and text messages without caring if consent was obtained or if the recipient was registered on the DNCR.

11. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ("TCPA"). But as every American knows, there are companies[—like Parkview in this case—]who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

12. Tammy brings this action for herself and for other similarly situated people in the United States to enjoin these abusive practices, and for damages.

## PARTIES

13. Plaintiff Tammy Cunningham is a resident of Washington County, Arkansas.

14. Defendant Parkview Advance LLC is a limited liability company with its principal place of business in Stamford, Connecticut.

## JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this District.

## FACTUAL ALLEGATIONS

17.     Tammy's privacy and phone have been invaded by non-emergency telemarketing calls from Parkview.

18.     Tammy is the residential subscriber of the cell phone number 479-871-1868. Tammy uses this phone number as her sole residential telephone, and makes and takes residential calls with this number in her home on a daily basis. Tammy has no other phone number that she uses for personal calls.

19.     Parkview knowingly and willfully texted Tammy at least three times from three different phone numbers:

> **On June 9, 2022 from 203-940-7512**
> Hi this is Tom from Parkview Advance out of Stamford, CT. I know you've recently been in the market for financing and I'm reaching out to see if you have any interest in my 8-12% line of credit for your business?
>
> **On July 25, 2022 from 210-500-4779**
> Good Afternoon, I hope this message finds you well. My name is Joey and I am a direct lender out of Stamford CT. I am reaching out to see if the business can take advantage of any of my financial products at this time. I can offer term loans, lines of credit, consolidations up to 4 million and a new product called a SBA Express. Anywhere from .5-4% APR. How much capital can your business use at this time?
>
> **On September 12, 2022 from 203-970-8925**
> Good Afternoon, I hope this message finds you well. My name is Joey and I am a direct lender out of Stamford CT. I am reaching out to see if the business can take

> advantage of any of my financial products at this time. I can offer term loans, lines of credit, consolidations up to 4 million and a new product called a SBA Express. Anywhere from .5-4% APR. How much capital can your business use at this time?

20. Tammy registered 479-871-1868 on the DNCR to stop telephone solicitations on May 13, 2010.

21. Tammy responded stop to the message on July 25, 2022, but two months later Parkview continued to spam Tammy.

22. On information and belief Parkview has also called Tammy but those calls are unknown at this time because Parkview uses a different phone number each time to hide its identity.

23. Tammy never provided her number to Parkview, never had a relationship with Parkview, and never gave permission to Parkview to send any type of communication.

24. These text messages were sent for the purpose of encouraging the purchase of loans.

25. The text messages were made using an Automatic Telephone Dialing System ("ATDS"), and/or an artificial or prerecorded voice message. This is based on the following facts:

    i. the text messages were not personalized;

    ii. Plaintiff's legal counsel has other clients who have reported telephone calls and texts from Parkview even though they never provided their numbers to Parkview;

    iii. the text messages came from different phone numbers each time to avoid getting blocked;

    iv. Tammy never provided her number to Parkview meaning they randomly generated her number; and

      v.      the phone numbers spammed by Parkview appear to be randomly or sequentially stored or produced not from information consensually provided to Parkview, but from bots, public data sources, or some other means as Tammy did not provide Parkview with her number.

26. Two of the text messages did not disclose the name of the company responsible for the text messages, but merely stated they were a "direct lender out of Stamford CT."

27. On information and belief, Parkview has sent text messages like these to thousands of people.

28. These text messages have caused Tammy frustration, stress, anxiety, and worry about scammers. The text messages hinder Tammy from determining the purpose of the message, from making a do-not-call request, and from monitoring compliance with the TCPA rules. The text messages cause Tammy to avoid looking at her phone when it may be important. The text messages reduce the storage and battery life on Tammy's phone. The text messages diminish the value of Tammy's phone and Tammy's enjoyment of life. In short, the text messages invade Tammy's privacy and cause a nuisance, an annoyance, and an intrusion into Tammy's seclusion.

## LEGAL STANDARD

29. **Autodialed Calls**. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. §

64.1200(a)(1). If the call "introduces an advertisement or constitutes telemarketing" then "prior express written consent" is required. 47 C.F.R. § 64.1200(a)(2).

30. **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

31. **Failure to Identify Caller**. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

32. **Do Not Call Requests**. Before initiating text messages, telemarketers must have a written policy relating to an internal do-not-call list and must honor do-not-call requests within a reasonable time not to exceed 30 days. 47 C.F.R. § 64.1200(d). "Telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so." *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 14069, ¶ 94. "This process [to honor do-not-call requests] is now largely automated. *Id*.

33. **Text message are calls**. Both phone calls and text messages qualify as a "call" under the TCPA. *Satterfield v. Simon Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).

## CLASS ACTION ALLEGATIONS

34. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself, and three Classes of persons similarly situated in

order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

35. Class Definitions. Plaintiff proposes the following Classes:

**The Automated Calls Class**
All people in the United States who (1) within four years prior to the filing of this action through the date of class certification, (2) Defendant sent a text message to their cellular telephone, (3) using the same equipment or type of equipment utilized to send text messages to Plaintiff.

**The National Do Not Call Class**
All people in the United States who (1) within the four years prior to the filing of this action through the date of class certification, (2) Defendant sent more than one telephone solicitation within any 12-month period, (3) to their residential cellular telephone number, (4) while listed on the national Do Not Call Registry.

**The Failure To Identify Class**
All people in the United States (1) who within four years prior to the filing of this action through the date of class certification, (2) Defendant sent more than one telemarketing text message within any 12-month period, (3) to their residential cellular telephone number, (4) where the text message did not disclose the identity of the entity on whose behalf the call was made like the message sent to Plaintiff.

**The Do Not Call Class**
All persons in the United States (1) to whom Defendant initiated more than one telemarketing text message within any 12-month period, (2) to their residential cellular telephone number, (3) after receiving a do-not-call request, (4) in the four years from the filing of this action through the date of class certification.

36. A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

37.     If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

38.     **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least 40 members. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

39.     **Commonality**.  A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The Supreme Court has said the word question in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

40.     There are questions of law and fact common to the proposed Classes. These questions include, inter alia:

   i.    Did they receive a text from Defendant?

      ii.      Was the number texted registered on the Do Not Call Registry?

     iii.     Did Defendant use an Automatic Telephone Dialing System ("ATDS")?

     iv.     Were the text messages for an emergency purpose?

      v.     Did the text messages properly identify the name of the sender and the entity sending the text?

     vi.     Were the actions willful or knowing?

41.    **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

42.    Plaintiff's claims herein are typical of those of the Classes she seeks to represent. Plaintiff's and the Class members claims arise from the same conduct of Defendant: text messages sent to people on the DNC registry, with no identification of the sender, and sent using an ATDS without express written consent.

43.    **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the

class? Plaintiff is an adequate representative of the Classes because her interests are common with the interests of the Classes, and she will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiff is represented by counsel competent and experienced in TCPA and class action litigation.

44. **Predominance of Common Questions and Superiority**. A plaintiff may bring a class action under Rule 23(b)(3) where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined on a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

45. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of

adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

46. Managing this case as a class action should have no significant difficulties. The law applicable to each putative class member is identical. The operative facts are too. Ultimately, the basic questions in this case are the same for all class members. For example, for the Automated Calls Class: Did Defendant text a putative class member using an ATDS? For the DNC Class the question for all members is: Did Defendant text a putative class member who was registered on the DNC registry? For the Failure to Identify Class, the question for all members is: Did Defendant properly identify themselves in the text message? The common answer to these questions will determine Defendant's liability. Precedent demonstrates these questions can be litigated on a class wide basis.

**FIRST CAUSE OF ACTION**
**Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)**
**(On Behalf of Plaintiff and the Automated Calls Class)**

47. Defendant's use of an ATDS to contact Plaintiff and members of the Automated Calls Class violated 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a).

48. As a result, Plaintiff and members of the Automated Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

49. Because the violation was knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

50. Plaintiff and members of the Automated Calls Class are also entitled to injunctive relief prohibiting Defendant from using an ATDS when sending telemarketing text messages without the prior express written consent of the called party.

### SECOND CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the Do Not Call Class)

51. Defendant's telephone solicitations via text message to the residential cellular telephones of Plaintiff, and members of the Do Not Call Class, while on the National Do Not Call Registry constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

52. As a result of the violation of 47 C.F.R. § 64.1200(c), Plaintiff and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

53. Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

54. Plaintiff and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendant from sending telephone solicitations via text messages to phone numbers on the DNCR.

### THIRD CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the Failure to Identify Class)

55. Defendant's sending of telemarketing text messages to the residential cellular telephones of Plaintiff, and members of the Failure To Identify Class, without disclosing the identity of the individual and identity of the entity on whose behalf the messages are sent, constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

56. As a result of the violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Failure To Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

57. Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

58. Plaintiff and members of the Failure To Identify Class are also entitled to and seek injunctive relief requiring Defendant to disclose the name of the actual individual and the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing.

### FOURTH CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the Do Not Call Class)

59. Defendant's sending of telemarketing text messages to the residential cellular telephones of Plaintiff, and members of the Do Not Call Class, after receiving a do not call request constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

60. As a result of the violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

61. Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

62. Plaintiff and members of the Do Not Call Class are also entitled to and seek injunctive relief requiring Defendant to disclose the name of the company on whose behalf any text messages are sent when telemarketing.

### RELIEF REQUESTED

63. Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as class representative;

C. Appointment of the undersigned as counsel for the Classes;

D. An order enjoining Defendant as set forth above;

E. An award of damages to Plaintiff and the Classes, as allowed by law; and

F. Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: January 5, 2023

        Respectfully Submitted,
        *Attorneys for Plaintiff*

        /s/ *Chester J. Bukowshi, Jr.*
        Chester J. Bukowski, Jr.
        Bar No. CT05186
        17 Cherry Tree Lane
        Avon, CT 06001
        Tel: (860) 712-4922
        cjbesq100@aim.com

        /s/ *Michael Hartmere*
        Michael Hartmere
        Pro Hac Vice Forthcoming
        Bar No. CT421260
        LawHQ, P.C.
        299 S. Main St. #1300
        Salt Lake City, UT 84111
        385-285-1090 Ext 30092
        michael.hartmere@lawhq.com